902 So.2d 1081 (2005)
STATE of Louisiana
v.
Freddie MARSALIS.
No. 04-KA-827.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*1083 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Thomas S. Block, Donald A. Rowan, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Defendant, Freddie Marsalis, was charged in a bill of information on August 13, 2002 with battery on a correctional facility employee in violation of LSA-R.S. 14:34.5.[1] He pled not guilty and filed several pretrial motions. He proceeded to trial on February 10, 2003. After a three-day trial, a six-person jury found defendant guilty as charged. Defendant was sentenced to four and one-half years at hard labor.
The State then filed a multiple offender bill of information alleging defendant to be a second felony offender based on a prior armed robbery conviction. Defendant initially *1084 denied the allegations contained in the multiple bill but later admitted his status as a second felony offender. His original sentence was vacated and he was re-sentenced as a multiple offender to four years and six months at hard labor.

FACTS
On June 27, 2002, defendant was involved in a physical altercation with Deputy Horace Vallotton at the Jefferson Parish Correctional Center (JPCC). At the time, defendant was an inmate at JPCC. Deputy Vallotton was working inmate security at the jail and was escorting Jamal Anthony, another inmate, back to his cell on the same "pod," or living area, where defendant was housed. When the door to Jamal's cell opened, Jamal ran off to the day room, or living area, a serious violation of policy and procedure. Deputy Vallotton backed off and called for backup.
By the time Sergeant Christopher Gordon arrived as backup, Jamal was in his cell but was still handcuffed. Sgt. Gordon entered the pod, with the intent of removing Jamal's handcuffs, and Deputy Vallotton followed behind. According to Deputy Vallotton, defendant approached him, said "get the f* * * out", and then shoved him in the chest. Deputy Vallotton stated he fell backwards at which time defendant came at him again and grabbed him. Sgt. Gordon testified he saw Deputy Vallotton and defendant having a verbal confrontation. He then saw Vallotton's head go back and defendant's hands go towards Deputy Vallotton's face. Defendant was subsequently removed from the pod and handcuffed.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court's denial of the motion for mistrial resulted in the jury being allowed to consider the evidence that Freddie Marsalis was housed in a maximum security pod reserved for inmates who had already been convicted, despite the fact that a pre-trial ruling on a motion in limine specifically forbade the testimony.

DISCUSSION
Defendant argues the trial court erred in denying his motion for a mistrial after the State elicited testimony from Deputy Vallotton that defendant was housed in the maximum security section of the prison where inmates who had already been sentenced were housed. Defendant maintains the testimony was an impermissible reference to other crimes evidence and was more prejudicial than probative.
Prior to trial, defendant made an oral motion in limine under LSA-C.E. art. 404(B) seeking to prohibit the State from presenting evidence that defendant was in jail for armed robbery and that he was awaiting trial for first degree murder. The trial court granted the motion in limine and specifically ruled that the State and its witnesses were not to reference that defendant had been convicted of armed robbery and was awaiting trial on first degree murder charges unless he took the stand.
During trial, Deputy Vallotton testified about the events that led up to the battery. He explained he was in the process of returning an inmate, Jamal Anthony, to his cell when Jamal ran into the day room. The State inquired into the housing set up at the jail and specifically asked Deputy Vallotton to explain what a "pod" was. Deputy Vallotton stated a pod was where the inmates were housed. He explained a pod holds 40 people, 20 on each side, and that Jamal lived on the right side of the pod. The State asked whether defendant lived in the same pod to which Deputy Vallotton affirmatively replied. Deputy Vallotton proceeded to describe how Jamal ran off into the day room. The State then asked Deputy Vallotton whether he was *1085 familiar with the particular pod and, specifically, "what is this particular pod?" Deputy Vallotton replied, "It's the maximum security side of the jail. It's sentenced inmates."
Defense counsel immediately moved for a mistrial arguing the testimony referred to defendant being in a maximum security pod which suggested to the jury that defendant was a problem or that he was housed there for a violent or serious crime and that he had already been sentenced for a particular crime. The trial court concluded the State had not violated the motion in limine because the specific term "maximum security" was not a part of the motion in limine. The trial court subsequently ordered that the State not elicit any further testimony from any future witnesses that defendant was housed in a maximum security area of the jail. Defense counsel again requested a mistrial which was denied by the trial court. The trial court explained that while the testimony could be a little more prejudicial than probative, it did not raise to the level of a mistrial. The trial court had earlier reasoned:
Because you know Mr. Marsalis is on trial for the charge of battery on a correctional officer, so while I think normally statements like that from a witness would be a basis for a mistrial, incarceration of a person or someone sentenced, but I think when the charge is battery on a correctional officer juries  these jurors know that Mr. Marsalis is in jail and I think that the normal grounds for a mistrial have to in some way not be followed to the T. I mean you have to allow more latitude in testimony because this is a crime that occurred inside the jail.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial unless the probative value of the evidence substantially outweighs its unfair prejudicial effect, and unless it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. LSA-C.E. arts. 403 and 404; State v. Tuckson, 00-1408 (La.App. 5 Cir. 2/28/01), 781 So.2d 807, 814, writ denied, 01-1129 (La.1/25/02), 806 So.2d 671. LSA-C.Cr.P. art. 770(2) provides that a mistrial shall be ordered "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to... [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]"
As a general rule, Article 770 does not apply to testimony by a State witness, since a witness is not considered a "court official" for purposes of the article. However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and therefore triggers the rule mandating a mistrial. State v. Tuckson, supra at 814. The reference must be to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. State v. Bell, 02-1127 (La.App. 5 Cir. 2/25/03), 840 So.2d 656, 659. A mistrial is warranted only if a comment or remark results in substantial prejudice to the accused. LSA-C.Cr.P. art. 771; State v. Tuckson, supra at 814. An improper reference to other crimes evidence is subject to a harmless error analysis. Id.
In State v. Smothers, 02-277 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, writ denied, 03-0447 (La.10/10/03), 855 So.2d 329, this Court found a reference to another crime contained in the defendant's confession that was played for the jury was not inadmissible evidence of other crimes. In Smothers, the defendant's confession was supposed to be excised of portions that *1086 referred to other crimes defendant allegedly committed. The defendant moved for a mistrial based on one comment that was apparently overlooked. During the confession, the police referenced the fact the robberies for which defendant was being questioned were separate from the reason defendant was currently in custody. This Court found the remark did not refer to any specific crime committed by the defendant and was vague and ambiguous. This Court nonetheless conducted a harmless error analysis and found the remark to be harmless.
Also, in State v. Sprinkle, 01-137 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, writ denied, 01-3062 (La.10/25/02), 827 So.2d 1174, the State's witness testified that the defendant was initially ruled out as a suspect because, at the time of the burglary, he was in the Jefferson Parish Correctional Center (JPCC). The State asked the witness whether there were telephones in the JPCC to which the witness affirmatively replied. The defendant argued a mistrial should have been granted because the testimony was an impermissible reference to another crime. This Court found the question and response at issue made no specific mention of other crimes committed or alleged to have been committed by the defendant.
In State v. Tuckson, supra, this Court concluded the State's fingerprint expert did not impermissibly refer to other crimes evidence when he testified about the process by which he compared latent fingerprints and stated he utilized a computer system that showed every person booked into the system, which included the defendant. The defendant argued the expert's testimony informed the jury that defendant was in the computer system and, therefore, had committed prior bad acts. This Court found the question and response made no specific mention of past crimes committed or alleged to have been committed by the defendant and, thus, was not an improper reference to other crimes. This Court further noted the prosecutor's questions appeared to have been aimed at eliciting the sequential steps the expert used as opposed to calling attention to the defendant's prior bad acts.
In the present case, as in the cited cases, we find that the objectionable comment that the pod was a maximum security area did not specifically mention past crimes committed by defendant and, thus, did not reference other crimes. Although Deputy Vallotton testified that area of the prison housed sentenced inmates, the testimony was elicited when the prosecutor inquired into the sequence of events involving Jamal Anthony, and not defendant. The comment by Deputy Vallotton describing the circumstances leading up to the incident at issue did not specify the prior bad acts; no mention was made that defendant was in jail for an armed robbery conviction or awaiting trial for first degree murder.
We fail to find that the deputy's comment constitutes a specific reference to other crimes evidence. Further, we find that the reference was not impermissible but rather was proof of the charged offense. Defendant was specifically charged with that portion of a battery on a correctional officer where "the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility. . . ." LSA-R.S. 14:34.5(B)(2). By the nature of the charge against defendant, it was clear he was in jail for something which suggests he committed or allegedly committed prior bad acts. Although the parties stipulated to this fact, the State was not prohibited from presenting evidence of this fact.[2] In State *1087 v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, 744-745, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), the Louisiana Supreme Court stated a defendant cannot control the State's method of proof by offering to stipulate to relevant evidence in order to exclude it from the jury's consideration.
Nonetheless, even assuming the comment constitutes an impermissible reference to other crimes, such an error is subject to a harmless error analysis. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102.
The evidence against defendant was overwhelming. Deputy Vallotton testified defendant shoved him in the chest and that he fell backwards. Sergeant Gordon and Deputy Kevin Smith testified they witnessed the unprovoked assault by defendant against Deputy Vallotton. The record supports a finding that the jury's guilty verdict was unattributable to the statement made by Deputy Vallotton that alluded to the fact defendant was a sentenced inmate at JPCC thereby suggesting defendant had committed another crime. Again, the very nature of the charge against defendant suggested he had committed a prior bad act so as to be in the custody of the Department of Corrections.
Thus, we fail to find that the trial court erred in denying defendant's request for a mistrial. We also note that defendant did not request an admonition regarding the comment.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court's denial of the defense's motion to admit proffered testimony of an unavailable witness, and/or failure to grant defendant's motion to continue to obtain the witness in court, deprived Freddie Marsalis of his ability to put on a defense.

DISCUSSION
Defendant argues the trial court erred in allowing him to put on testimony of an unavailable witness through another witness. Specifically, defendant contends the trial court erred in refusing to allow Ronnie Montgomery, defendant's private investigator, to testify about what Jamal Anthony told him during Montgomery's investigation into the case. Defendant asserts Jamal was an unavailable witness and, therefore, he should have been able to present Jamal's testimony through another source. Alternatively, defendant argues the trial court erred in denying his request for a continuance to allow him the opportunity to secure Jamal's appearance at trial. Defendant maintains he was deprived of his right to present a defense.
At trial, defendant called Jamal Anthony as his first witness but he was not present. Defense counsel noted that a subpoena had been issued for Jamal, was served by a special process server appointed by the court, and the return was in the record. Defense counsel sought to offer Jamal's testimony through the testimony of Ronnie Montgomery, defendant's hired private investigator. The State objected on the basis the testimony would be hearsay. Defense counsel maintained the testimony was admissible because Jamal was an unavailable witness. The trial court noted *1088 that what Jamal told Mr. Montgomery was not under oath and was not subject to cross-examination.
Defense counsel then proffered Mr. Montgomery's testimony. During the proffer, Mr. Montgomery testified that he located Jamal and interviewed him about the incident earlier that day outside the courthouse. Jamal told Mr. Montgomery that he was on lock-down and that he refused to go to his cell. Jamal stated the guards were mishandling him and that defendant told the guards that they should not be handling Jamal in that manner. Jamal further told Mr. Montgomery that he had a scar on his back from the incident. Mr. Montgomery testified that Jamal appeared very nervous and expressed fear of retaliation for testifying.
At the conclusion of the proffer, the trial court denied defendant's request to allow Mr. Montgomery to testify before the jury as to what was said during his interview with Jamal. The trial court noted that Mr. Montgomery could testify that he observed a scar on Jamal's back but that he could not say anything about what Jamal told him. Thereafter, defense counsel moved for a continuance until the next day to locate Jamal which was denied by the trial court.
Generally, an out-of-court statement is inadmissible hearsay. LSA-C.E. art. 802. Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise specified in the Code of Evidence or other legislation. LSA-C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Sarrio, 01-543 (La.App. 5 Cir. 11/27/01), 803 So.2d 212, 223, writ denied, 02-0358 (La.2/7/03), 836 So.2d 86.
Jamal's statement to Mr. Montgomery is hearsay and does not fit into any of the recognized exceptions to the hearsay rule. Defendant argued the statement was admissible hearsay because Jamal was an unavailable witness. The unavailability of a witness is not in and of itself an exception to the hearsay exclusion. Rather, there are certain hearsay exceptions which are listed by LSA-C.E. art. 804(B) that apply when the witness is unavailable. Such exceptions include former testimony of the witness, a statement made by the witness under belief of impending death, a statement against interest, and a statement of personal or family history. LSA-C.E. art. 804(B). Jamal's statement does not fit within any of the listed exceptions for an unavailable witness.
Nonetheless, the Louisiana Supreme Court has recognized that normally inadmissible hearsay may be admitted into evidence if it is reliable, trustworthy, and relevant if its exclusion would interfere with the defendant's constitutional right to present a defense. State v. Van Winkle, 94-0947 (La.6/30/95), 658 So.2d 198, 202; State v. Gremillion, 542 So.2d 1074, 1078 (La.1989). The supreme court has noted that this "fairness exception" to the hearsay rule was an unusual exception and should be sparingly applied. State v. Trahan, 576 So.2d 1, 11 (La.1990).
The right to present a defense does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Shaw, 00-1051 (La.App. 5 Cir. 2/14/01), 785 So.2d 34, 45, writ denied, 01-0969 (La.2/8/02), 807 So.2d 861. *1089 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. The determination concerning the relevancy of the evidence is within the discretion of the trial judge whose ruling will not be disturbed in the absence of an abuse of discretion. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 76, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
Defendant asserts Jamal's statement was the only evidence that supported his theory of self-defense or defense of others. However, although the record indicates that there were several other inmates in the pod on the day of the altercation, defendant failed to call any of these individuals as witnesses. Defendant's only witness was Jamal's mother but he was unable to elicit what Jamal told her about the incident because the trial judge sustained the State's hearsay objections.
Under the Gremillion and Van Winkle guidelines, the hearsay evidence must not only be relevant but must also be trustworthy and reliable. In Gremillion, defendant's conviction for manslaughter was reversed because the trial judge refused to allow into evidence the victim's statement to a testifying police officer. The victim had spoken with the deputy approximately nineteen hours after he was attacked and subsequently died prior to trial. The trial judge found the victim's statement was hearsay but the supreme court disagreed stating that where the hearsay is reliable and trustworthy it should be admitted if its exclusion would interfere with a defendant's right to present a defense.
In State v. Hill, 93-405 (La.App. 5 Cir. 3/29/94), 636 So.2d 999, writ denied, 94-3144 (La.9/1/95), 658 So.2d 1259, this Court found that the trial court did not err in excluding a statement made by an unavailable witness "because the defense hadn't shown that it was reliable and trustworthy and because her statement wasn't corroborated by other credible evidence." Id. at 1003. In Hill, the unavailable witness had given a written statement to the police three days after the shooting at which she was present. Her statement was favorable to the defendant because she stated the victim's friend was a drug dealer who was armed with two guns. She stated she heard a shot before the defendant fired and that the victim was shot by accident. This Court stated there was no other testimony about the drug dealer having two guns and that there was only weak evidence of someone other than the defendant firing a weapon. This Court also determined the witness' statement that the victim had been shot by accident had little probative value. Id. at 1003.
As in Hill, we conclude that defendant in the present case failed to show Jamal's hearsay statement was reliable and trustworthy. The record indicates that the declarant had a criminal record with multiple convictions and that he was not a model inmate. Mr. Montgomery acknowledged that he could not vouch for Jamal's credibility. Further, unlike the situation in Gremillion, we fail to find the circumstances of this case are so unique and unusual so as to warrant a new trial considering the caution of the supreme court that the "fairness exception" should be used sparingly and in unusual circumstances.
Moreover, we find no abuse of the trial court's discretion in denying defendant's motion for a recess to secure the presence of Jamal Anthony. The record in this case indicates that Jamal Anthony appeared on the date of trial pursuant to an instanter subpoena, but disappeared after speaking to defendant's investigator. Defendant *1090 failed to request an arrest warrant for this witness, and in fact declined the court's offer to order an attachment for Jamal. Under the circumstances presented here, defendant failed to prove that the witness would be available for testimony if the trial had been deferred to the next day. La.C.Cr.P. art. 709. We therefore find no error of the trial court in denying defendant's motion for a recess of trial.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We have discovered one error which requires corrective action.
Although the original commitment and multiple offender commitment both indicate defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8, the transcript does not so reflect. Generally, when there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, the trial court is hereby instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days of the rendition of the appellate opinion and to file proof in the record that defendant received said notice. State v. Cordero, 99-44 (La.App. 5 Cir. 6/1/99), 738 So.2d 84, 93, writs denied, 99-1877 and 99-1878 (La.11/24/99), 750 So.2d 981.

CONCLUSION
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant Freddie Marsalis are affirmed. The case is remanded to the trial court with instructions to inform defendant of the correct prescriptive period for post-conviction relief.
AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] The bill of information was amended on February 7, 2003 to allege the battery occurred while defendant was under the jurisdiction and within the legal custody of the Department of Corrections or while he was being detained in the Jefferson Parish Correctional Center.
[2] Specifically, the parties stipulated that the incident occurred while defendant "was under the jurisdiction and legal custody of the Department of Corrections or while being detained in the Jefferson Parish Correctional Center, which is a jail, prison or correctional facility."