976 So.2d 196 (2007)
STATE of Louisiana
v.
Jimmy D. CARTER.
No. 07-KA-270.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
*198 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Anne Wallis, Roger Jordan, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and GREG G. GUIDRY.
CLARENCE E. McMANUS, Judge.
On November 17, 2005, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant, Jimmy D. Carter, and two codefendants with looting, a violation of LSA-R.S. 14:62.5(B).[1] After a four-day trial, a twelve-member jury found the defendant guilty as charged. Immediately after the denial of his Motion for New Trial, the trial judge sentenced the defendant to 12 years at hard labor. Pursuant to the state's filing of a Multiple Bill, the defendant was adjudicated a second felony offender. The trial court vacated his original 12 year sentence, and resentenced him to 18 years at hard labor without benefit of probation or suspension of sentence. The defendant timely appealed the conviction and sentence.
At trial, Deputy Ryan Singleton of the Jefferson Parish Sheriff's Office testified that after Hurricane Katrina he worked twelve-hour shifts from 6:00 a.m. to 6:00 p.m., in two-manned cars due to sporadic communication capabilities, as a result of the hurricane. He patrolled to protect the public and remaining businesses from criminal activity. At the time, the businesses in the area did not have normal security. The alarms did not work because the electricity was out. As officers began to quit after the hurricane, the Sheriff's Department was no longer able to patrol in two-man units. According to Deputy Singleton, this put the officers on patrol in danger and at greater risk of injury or death. Therefore, the Sheriff's Department utilized the assistance of personnel from outside agencies, as sworn special deputies. During the week of September 3, 2005, Deputy Singleton was assisted by Captain Kevin Hinsley and Canine Deputy Elmore Horn. Both officers were from Douglas County, Georgia.
On the morning of September 2, 2005, Deputy Singleton discovered that the Burlington Coat Factory ("Burlington") had been broken into and looted after his shift on the previous day. However, there were still items remaining in the store.
On the morning of the next day, September 3, 2005, Deputy Singleton was in his police vehicle patrolling in the Harvey-Gretna *199 area with the Douglas County officers, when he saw three black males exiting Burlington. Each of the three men had a backpack. He was able to see the faces of the men and the clothing they wore. When the men saw him, they ran. He was unable to follow quickly behind them in his vehicle, because of all the debris. He theorized that the three men went into a convalescent home behind Burlington, because he did not see them running down the street. He checked the area for the men, but he did not find them.
Thirty minutes to an hour later while he was patrolling on Pailet Street, in Harvey, Deputy Singleton saw the same three men that he saw exiting Burlington. They were each still carrying a backpack. Deputy Singleton opined that it would take 30 to 45 minutes to walk from Burlington to Pailet Street using the drainage canal. Deputy Singleton exited his vehicle with his weapon drawn, pointed his weapon at the three men, and ordered the men to drop the backpacks. The three men complied. The Douglas County officers also exited their vehicle with their weapons drawn. Then, Deputy Singleton conducted a pat down search for weapons. No weapons were found on the three men. Deputy Singleton also searched the backpacks carried by the three men for weapons. While going through the backpacks, Deputy Singleton noticed that the backpacks were from Burlington and the backpacks all contained tagged items of merchandise from Burlington. He counted 26 items in total, including several t-shirts, a pair of shorts, and a pair of brown Nike's. All of the items found had price tags on them. The value of all the Burlington merchandise totaled $368.00. Deputy Singleton did not separately inventory the items in each backpack. Deputy Singleton placed the subjects under arrest for looting. Thereafter, he returned the merchandise to Burlington, because the Sheriff's department had no services available to photograph or to seize and store the items.
While Deputy Singleton was searching the backpacks, 15 to 20 people were yelling obscenities at the officers from a nearby apartment complex. In response, the Douglas County officers took a position between the apartment complex and Deputy Singleton to protect him.
Deputy Singleton testified in court that he had no doubt in his identification of the defendant and his codefendants as the three men that he saw leaving Burlington, that he later stopped with backpacks and merchandise from Burlington, and that he arrested.
Captain Hinsley and Deputy Horn both testified that their duty was to backup the Jefferson Parish Sheriff Department officers, while volunteering in Louisiana after the hurricane. Officers Hinsley and Horn worked in two-man 12-hour shift patrols following Deputy Singleton from 6:00 a.m. to 6:00 p.m. Captain Hinsley testified that he drove their Douglas County police vehicle behind Deputy Singleton's department vehicle. They drove with their police lights on and stayed within eyesight of Deputy Singleton, because they were unfamiliar with the area. According to Deputy Horn, they were usually within one to 10 car-lengths behind Deputy Singleton's car.
On the morning of September 3, 2005, Officers Hinsley and Horn again followed Deputy Singleton. Neither of the Douglas County officers saw the individuals coming out of Burlington.
Officers Hinsley and Horn provided backup when Deputy Singleton arrested three men in the 1600 block of Pailet Street. They did not participate in the search of the defendants or the backpack. They secured the scene in order to make sure their safety and that of Deputy Singleton *200 was not jeopardized, as several people on a nearby porch began to come downstairs and approach them. Neither Deputy Horn nor Captain Hinsley could identify the defendant or the codefendants, in court, as the same men who were arrested by Deputy Singleton, on September 3, 2005. Deputy Horn only remembered that one of the men had dreadlocks that poked out from his hat.
Hao Nguyen, the store manager for the Burlington located on Manhattan, in Harvey, testified that the store was in normal condition, on Saturday, August 27, 2005. The four front doors of the store were locked and boarded with wood, in order to secure them for the impending hurricane. When Nguyen returned after Labor Day, a week after the storm, he surveyed the store and found the front entrances to the store were broken into. The hinges on the inside iron gate were broken at the wall, and the right door was broken. Some merchandise had been taken, and some merchandise had been strewn on the floor. Nguyen testified that he did not know any of the codefendants, and had not given them or anyone permission to enter and take merchandise either during or after the hurricane, on September 3, 2005.
Codefendant Larry Cheatteam a/k/a Allen Jones testified that at approximately 9:00 a.m., on September 3, 2005, he and the codefendants were going to his uncle's residence, on Pailet Street. As they neared his uncle's residence, the police came behind them. Deputy Singleton jumped out of his vehicle with his gun already pointed at them. He ordered them onto the ground. They complied. The other two officers also got out of their vehicle. Then, the officers cocked their shotguns and pointed them in their direction. When Cheatteam's cousin approached from down the street to inquire about the situation, Deputy Singleton pointed his weapon at his cousin. Deputy Singleton talked to his cousin, then informed Cheatteam and the other two men that they were going to jail for looting. Cheatteam testified that when he asked Deputy Singleton to define looting, he refused. Cheatteam testified that he did not go into Burlington and put clothes in a backpack, and then run out of the store. In addition, he did not have a backpack containing merchandise from Burlington when he was stopped and subsequently arrested. Cheatteam admitted that he was wearing a hat and his hair was in dreadlocks when he was stopped by the police, on September 3, 2005. However, he denied that he and the codefendants looted Burlington on that date.
The defendant did not testify.
In his first allegation of error, defendant alleges that the trial court erred in denying his motion for mistrial predicated upon the State's improper reference to inadmissible other crimes evidence.
The defendant and the codefendants were tried together. During the trial, the district attorney questioned codefendant Larry Cheatteam about looting after the storm. Defense counsel for one of the codefendants moved for a mistrial alleging that the State had made a reference to other crimes by implying that Cheatteam was out looting other stores. Defense counsel for the defendant and the other codefendant joined in the motion for mistrial. The trial judge sustained the defense's objection and struck the last question by the district attorney. In addition, the trial judge informed the jury that, "When [she] sustain[ed] an objection to a question, you are to draw no inference on how it was to be answered."
Later, during trial, the prosecutor asked Cheatteam, "So what do you think should happen to a looter?" Defense counsel for codefendants objected on grounds of relevance, *201 and the trial judge sustained the objection. Then, the prosecutor asked Cheatteam, "You didn't take that last little kick at thee [sic] Parish while it was down? Did you ". After the trial court overruled the codefendant's objection, the prosecutor again asked, "You didn't take a last little kick at the city while it was down, did you?" Codefendant Cheatteam responded, "No, sir."
On appeal, the defendant argues that the trial court erred in denying his motion for mistrial, after the district attorney made an impermissible reference to other crimes evidence. The defendant contends that the prosecutor's question about looting, combined with his other questions about "kicking" the Parish, suggested that he had looted, and had kicked the "Parish while it was down". He argues this questioning inflamed the jury and caused the jury to punish the defendant for crimes that he did not commit.
Generally, evidence of other crimes, wrongs, or acts committed by a criminal defendant is not admissible at trial, although relevant, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and unless it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. LSA-C.E. arts. 403 and 404; See State v. Marsalis, 04-827 (La. App. 5 Cir. 4/26/05), 902 So.2d 1081, 1085.
[A] mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial . . . refers directly or indirectly to . . . [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.] . . .
LSA-C.Cr.P. art. 770(2). The comment must not arguably point to a prior crime; rather, to trigger a mandatory mistrial, the remark must unmistakably point to evidence of another crime. State v. Clark, 05-652 (La.App. 5 Cir. 2/14/06), 924 So.2d 282, 289, writ denied, 06-622 (La. 10/13/06), 939 So.2d 372, and writ denied, 06-1175 (La.1/12/07), 948 So.2d 138. "An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial." LSA-C.Cr.P. art. 770. An impermissible reference to inadmissible evidence of another crime committed or alleged to have been committed by defendant, which is deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial. State v. Marsalis, 902 So.2d at 1085. A denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Clark, 924 So.2d at 290. An improper reference to other crimes evidence is subject to a harmless error analysis. State v. Marsalis, 902 So.2d at 1085.
In the present case, the prosecutor was questioning a codefendant, not the defendant. The prosecutor made no reference to other crimes committed or allegedly committed by the defendant. Instead, the prosecutor only asked the codefendant if there had been looting in any of the closed businesses to which the codefendant responded that he guessed so. But, he added that he had not seen any looting. Then, the prosecutor asked the codefendant if he had gone into any of those stores. The codefendant did not reply, because the defense objected. It appears that none of the prosecutor's questions or the codefendant's answers unmistakably pointed to evidence of another crime committed by the defendant. In addition, as noted in the defense and the State, the prosecutor's subsequent questions, following the denial of the motion for mistrial, also do not refer to other crimes evidence. *202 Therefore, we find that the trial judge did not err in denying the defense's motion for a mistrial.
In addition, even assuming the prosecutor's questions constituted an impermissible reference to other crimes, any such error is subject to a harmless error analysis. The test for determining if error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. State v. Marsalis, 902 So.2d at 1087. Considering Deputy Singleton's consistent and positive identification of the defendant at the scene of the looting, at the subsequent stop and arrest, and at trial, in light of the evidence, it appears that even if this was other crimes evidence the admission was harmless.
In his second allegation of error, the defendant argues that his habitual offender sentence is excessive.[2] He claims that his age of 35 years and the nature of his crime, i.e. "scavenging in a looted out business," makes the sentence he received excessive. The defendant also suggests that the trial court did not consider the mitigating factors pursuant to LSA-C.Cr.P. art 894.1. The defendant contends that he was just looking for clean clothes. Therefore, he is not the most blameworthy of individuals. He notes that his conviction is for a property crime, which is not a horrific conviction.
In the present case, the defendant did not raise the issue of the trial judge's failure to comply with LSA-C.Cr.P. art. 894.1 below. Since the defendant failed to raise this issue in the trial court below or in a motion to reconsider sentence, he is precluded from raising this issue on appeal. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 967-68, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
In addition, the record reveals that the defendant failed to file a motion to reconsider sentence. LSA-C.Cr.P. art. 881.1(B) states that "[t]he motion [to reconsider sentence] shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based." LSA-C.Cr.P. art. 881.1(E) provides:
[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
See State v. Adair, 04-120 (La.App. 5 Cir. 5/26/04), 875 So.2d 972, 974. Failure to state the specific grounds on which the motion is based precludes a defendant from raising issues relating to statutory errors or deficiencies in sentencing on appeal, not constitutional excessiveness. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879. This Court has reviewed a defendant's constitutional challenge of a sentence, in the absence of a motion to reconsider sentence. State v. Adair, 875 So.2d at 974. The failure to file a motion to reconsider sentence or to state specific grounds upon which the motion is based, limits the defendant to a bare review of the sentence for constitutional excessiveness. Id.; State v. Crawford, 05-494 *203 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Crawford, supra. A sentence that is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering is unconstitutionally excessive, even if it is within the statutory limits. State v. Riche 608 So.2d 639, 640 (La.App. 5 Cir. 10/27/92), writ denied, 613 So.2d 972 (La.1993). A trial court is afforded great discretion in determining sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. LSA-C.Cr.P. art. 881.4(D), State v. Adair, 875 So.2d at 974-75; State v. Riche, 608 So.2d at 640. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Crawford, supra. Age is an insufficient justification for a downward departure in a sentence. State v. Hernandez, 02-892 (La.App. 5 Cir. 1/28/03), 839 So.2d 281, 285.
The three factors that are considered in reviewing a trial court's sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts. State v. Crawford, 922 So.2d at 670. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Crawford, 922 So.2d at 671.
The defendant, in this case, was convicted of looting, a violation of LSA-R.S. 14:62.5(B). LSA-R.S. 14:62.5 states in pertinent part:
Looting is the intentional entry by a person without authorization into . . . any structure belonging to another and used in whole or in part as a place of business, . . . in which normal security of property is not present by virtue of a hurricane, flood, . . . act of God, or force majeure of any kind, . . . and the obtaining or exerting control over or damaging or removing property of the owner.
The sentencing exposure for a looting conviction pursuant to LSA-R.S. 14:62.5(B) is a fine of "not more than ten thousand dollars or imprisoned at hard labor for not more than fifteen years, or both." LSA-R.S. 14:62.5(B). After his multiple bill hearing, the defendant was found to be a second felony offender. Based on his second felony multiple offender status, the defendant's sentencing exposure for imprisonment was not less than 7½ years and not more than 30 years. LSA-R.S. 15:529.1(A)(1)(a). The defendant received a habitual offender sentence of 18 years. Therefore, the defendant received a mid-range sentence.
We find no abuse of discretion in the trial court's sentence. The nature of the crime, and the circumstances under which the arrest took place, suggest that the events that took place in the aftermath of the hurricane presented local authorities, especially the police departments, with unprecedented problems that overwhelmed the system. The police force was reduced and, therefore, unable to employ their normal safety procedures to protect the public and themselves. The defendant's expressed rationale for the looting, i.e. the need for clean clothes, was unjustifiable when juxtaposed against the city's need to maintain order, especially during a time of *204 crisis. The defendant's actions placed the police officers in danger as they carried out their duty to enforce the law. Finally, the defendant had a prior conviction for armed robbery, a crime of violence, for which he received a seven-year sentence. We find defendant's allegation of excessive sentence to be without merit.
In his third allegation of error, defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSC.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following which requires our attention.[3]
As noted by the State in its brief, the defendant was not advised of the prescriptive period for filing for post-conviction relief at either the original sentencing or the habitual offender sentencing hearings, as required by LSA-C.Cr.P. art. 930.8.[4]
LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. A review of the record indicates that the trial judge failed to advise the defendant of the appropriate prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. State v. Simmons, 03-20, p. 14 (La.App. 5 Cir. 4/29/03), 845 So.2d 1249, 1263. Accordingly, we remand this case to the trial court and order the court to inform defendant of the appropriate prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and by filing written proof that the defendant received the notice in the record. Id.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. The case is remanded and the trial court is ordered to notify defendant of the prescriptive period for post-conviction relief by written notice within ten days of rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] This Court has considered the appeals of codefendants, State v. Corey Cheatteam a/k/a Kedrick Carter, 07-272 and State v. Allen Jones a/k/a Larry Cheatteam, 07-271.
[2] The trial judge sentenced the defendant to 18 years at hard labor without benefit of probation or suspension of sentence. However, in his brief, the defendant notes that he received a sentence of 18 years without parole. Apparently, the defendant is referring to his parole eligibility, which is determined by the Department of Corrections pursuant to LSA-R.S. 15:574.4. See State ex rel. Porter v. State, 04-2080 (La. 11/28/05), 916 So.2d 123.
[3] The record also reveals that the trial judge did not observe the mandatory 24-hour time delay between denying a motion for new trial and imposing sentence. However, when the defendant's original sentence is set aside at a multiple offender proceeding, the trial court's failure to observe the 24-hour delay is harmless. State v. Sims, 02-1244 (La.App. 5 Cir. 4/29/03), 845 So.2d 1116, 1122, writ denied, 03-2189 (La.8/20/04), 882 So.2d 570.
[4] The commitment/minute entries for both the defendant's original and his habitual offender sentencing indicate that on both occasions the defendant was informed of his post-conviction rights. The transcripts of the defendant's original sentencing and his habitual offender sentencing hearings indicate that the defendant was not informed of his post-conviction rights on either occasion. When there is a discrepancy between the transcript and the commitment/minute entry, the transcript governs. See State v. Lynch, 441 So.2d 732, 734 (La. 1983).