HANS J. LILJEBERG, Judge.
| ¡^Defendant appeals his conviction for second degree murder and two counts of intimidating a witness. For the following reasons, we affirm defendant’s convictions and sentences.

PROCEDURAL HISTORY

On July 19, 2012, a Jefferson Parish Grand Jury indicted defendant, Cornell D. Butler a/k/a “Poppa,” with second degree murder, in violation of La. R.S. 14:80.1, and two counts of intimidating a witness in violation of 14:129.1. On July 26, 2012, defendant pled not guilty to all three charges.
Defendant filed a motion to sever the second degree murder charge from the charges for intimidating witnesses, which the trial court heard and denied on December 20, 2013.[1] Trial commenced on February 18, 2014. On February 21, 2014, a twelve-person jury found defendant guilty as charged on all counts. Defendant filed a motion for new trial and for post-verdict judgment of acquittal, which the trial court denied on March 20, 2014.
On that same day, the trial court sentenced defendant to life imprisonment *1286 without benefit of parole, probation, or suspension of sentence on the second degree murder charge, and 40 years imprisonment at hard labor on each count for intimidating a witness. The trial court ordered all counts to run consecutively. On ^September 18, 2014, defendant filed an application for post-conviction relief requesting an out-of-time appeal, which was granted on September 25, 2014.

FACTS

On April 18, 2012, Officer Kenneth Goodman of the Jefferson Parish Sheriffs Office responded to a call regarding gunshots at 244 Church Street in Avondale, Louisiana. When he arrived, Officer Goodman observed the victim, later identified as Durrell Dearmas, lying in the driveway between two cars. Mr. Dearmas was unresponsive and appeared to have several gunshot wounds. Police recovered seven fired nine-millimeter caliber cartridge casings from the crime scene. Jene Rauch, a firearm expert, testified all seven cartridge casings were fired from the same weapon. Forensic pathologist, Dr. Dana Troxclair, testified that defendant had seven gunshot wounds and died from fatal wounds to his head, neck and chest.
The murder occurred in front of Arthur Veal’s house. Through her investigation, Detective Rhonda Goff of the Jefferson Parish Sheriffs Office learned Mr. Veal allowed the victim, Durrell Dearmas, to sell drugs in front of his house. In return, Mr. Dearmas provided Mr. Veal with drugs. Mr. Veal saw defendant in front of his house prior to the murder. Mr. Veal went inside and approximately five minutes later, he heard gunshots. Mr. Veal did not witness the shooting.
Shortly after the shooting, a neighbor, Darrell[2] Thomas a/k/a “Big Round,” called 911 and stated he witnessed the murder. Mr. Thomas lived across the street and three houses down from Mr. Veal’s home. At trial, Mr. Thomas testified that prior to the murder, defendant and several other people were on his side patio. Mr. Thomas went inside and later noticed everyone leaving, including defendant, who |4walked to Mr. Veal’s house. Shortly thereafter, Mr. Thomas heard a gunshot and ran to the bay window in the front of his house. Mr. Thomas testified he saw defendant shoot Mr. Dearmas several times. Prior to the murder, defendant complained to Mr. Thomas about Mr. Dearmas selling drugs in the neighborhood when Mr. Thomas no longer lived there. Defendant also told Mr. Thomas he did not like the way Mr. Dearmas treated people.
Both Mr. Veal and Mr. Thomas provided Detective Goff with the same address for defendant on Glen Della Drive, where he resided with his grandmother. Based on this information, Detective Goff prepared a search warrant for the Glendella address the morning after the murder. During the search, defendant’s grandmother identified his bedroom. Officers recovered live nine-millimeter caliber ammunition, a .22 caliber banana-styled clip magazine from a .22 caliber rifle, “380 auto cartridges,” “Monarch 38 Special” ammunition and a “Winchester .45 auto cartridge.” Officers located most of this ammunition in a concealed compartment contained in the wall of defendant’s closet.
Detective Goff testified defendant turned himself in and she read him his *1287 Miranda[3] rights. In his statement, defendant provided the first names of various people he claimed could provide him with an alibi at the time of the murder. Defendant eventually stated he' was with his brother, Preston Butler, when the murder occurred. However, Preston Butler later refused to provide an alibi for defendant.
Detective Goff further testified they monitored defendant’s jail phone conversations in the days following his arrest. During one of these conversations, defendant placed himself at the crime scene at the time of the murder. Defendant also directed various individuals to make contact with Mr. Thomas and Mr. Veal. | BIn one conversation, he stated “[hjoller at that boy, Big Round.” Defendant also wanted his girlfriend, Kiera, to speak with “Big Round” and provided her with his location. During a conversation with his brother, defendant stated, “I need you to do something for me,” and his brother stated, “Oh, you mean holler at those people Kiera told me.” During another recording, someone told defendant “we saw Arthur Veal walk outside.” Defendant stated, “Art, if Art, that boy come in, I’m over with.” He also stated at another time, “if those witnesses come, they’re going to lock me up; if they testify, that’s it, I’m gone.”
On April 23, 2012, a week after the murder; defendant had a phone conversation with his brother asking him to get some tools “I’ll be Gucci with.” On April 24, 2012, Mr. Veal was sitting in a truck in front of his home and saw three people on the other side of the street with guns aimed at him. Mr. Veal jumped out of the truck and was shot in the back. The following night, on April 25, 2012, Mr. Thomas saw five or six people wearing hoodies outside of his house. He recognized these people as friends and associates of defendant and further testified one of them had a gun. They left a newspaper article at his door about a murder witness who was killed.

LAW AND DISCUSSION

In defendant’s first assignment of error, he argues the trial court erred in failing to sever the second degree murder charge from the two counts of intimidating a witness. Defendant contends these charges are completely dissimilar and he was prejudiced by the jury -hearing all evidence in one trial. Defendant argues the only evidence identifying him as the shooter was from Mr. Thomas, one of the alleged targets of the intimidation. He contends the admission of the jail house phone calls and other evidence relating to the counts for intimidating a witness relieved the State of its burden to prove identity with respect | fito the murder charge. He argues that by introducing this evidence, the State confused the issues and portrayed him as a “criminal mastermind.”
In response, the State first argues defendant waived any objection to the join-der of offenses' because he failed to file a motion to quash based on misjoinder. As explained above, the State acknowledged defendant filed a motion to sever the offenses and provided the trial court with an opposition brief on the record. The parties argued the merits of this motion at a hearing before the trial court after which the trial court denied the motion. We find defendant did not waive his objection.
Under Louisiana law, joinder of offenses is authorized pursuant to La.C.Cr.P. arts. 493 and 493.2. Article 493 allows the join- *1288 der of offenses which “are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.” Felony offenses may be joined even if they are not triable by the same mode of trial pursuant to La.C.Cr.P. art. 493.2:
Notwithstanding the provisions of Arti--cle 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
La.C.Cr.P. art. 495.1 further provides if a defendant is prejudiced by the joinder of offenses in the indictment or by joinder for trial, the court may “order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.”
|7A defendant has a substantial burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982); State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 44. In State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1232, the Louisiana Supreme Court discussed the considerations a trial court must take into account in determining whether to sever offenses:
A motion to sever is addressed to the sound discretion of the trial court, and the court’s ruling should not be disturbed on appeal absent a showing of an abuse of discretion. [State v.] Brooks, 541 So.2d [801] at 804 [La.1989] (citing State v. Williams, 418 So.2d 562, 564 (La.1982)). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Id. (quoting State v. Washington, 386 So.2d 1368, 1371 (La.1980)). However, the fact that evidence of one of the charges would not be admissible under State v. Prieur, 277 So.2d 126 (La.1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes, if the joinder is otherwise permissible. State v. Davis, 92-1623, p. 9 (La.5/23/94), 637 So.2d 1012, 1019 (citing State v. Celestine, 452 So.2d 676 (1984)). Finally, there is no prejudicial effect from joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense separate in its deliberations. Brooks, 541 So.2d at 805.
In the present case, we find all three counts are sufficiently connected because the witnesses subjected to the intimidation *1289 were also witnesses to the murder. The State presented the evidence pertaining to each count in a logical and simple manner. The trial court charged the jury separately as to each offense, explaining the State’s burden of proof with respect to each count in detail. Thus, we find it unlikely the joinder of the offenses confused the jury.
| ^Defendant also failed to satisfy his substantial burden to establish any prejudice he suffered as a result of the joinder. He contends the joinder of offenses relieved the State of its burden to establish his identity. However, the State presented testimony from a credible eyewitness establishing defendant as the person who committed the murder.
Furthermore, even if the trial court had severed the counts, evidence regarding defendant’s involvement in the intimidation of witnesses would have been admissible in the murder case. See State v. Parent, 02-835 (La.App. 5 Cir. 12/30/02), 836 So.2d 494, 506-507. Evidence regarding a defendant’s attempt to threaten, kill, intimidate or dissuade a witness from testifying is admissible and relevant to show consciousness of guilt on the defendant’s part and his desire to evade prosecution. State v. Lewis, 12-0803 (La.App. 4 Cir. 9/25/13), 125 So.3d 1252, 1263, writ denied, 13-2537 (La.6/20/14), 141 So.3d 279.
The trial court did not abuse its discretion in denying defendant’s motion to sever the offenses. Accordingly, this assignment of error lacks merit.
In defendant’s second assignment of error, he argues the trial court erred in admitting rounds of ammunition into evidence which were different calibers than the rounds used in the shooting. Defendant contends these rounds constituted evidence of other crimes which are inadmissible pursuant to La. C.E. art. 404(B)(1), because this evidence is irrelevant and introduced for the sole purpose of portraying defendant as “the shooter and a bad person.” Defendant also complains the State relied on a hearsay statement from his grandmother to identify the room where most of the rounds were located as defendant’s bedroom.
First, defendant did not object to the use of his grandmother’s statement regarding the location of his bedroom before the trial court. A new basis for objection cannot be raised for the first time on appeal. La.C.Cr.P. art. 841. ^Therefore, we will not consider defendant’s attempt to circumvent his waiver of this objection.
Evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); State v. Davis, 08-165 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 303, writs denied, 08-2188 (La.5/1/09), 6 So.3d 810 and 08-2200 (La.5/1/09), 6 So.3d 811. The defendant bears the burden to show he was prejudiced by the admission of the other crimes evidence. State v. Miller, 10-718 (La.App. 5 Cir. 12/28/11), 83 So.3d 178, 187, writ denied, 12-282 (La.5/18/12), 89 So.3d 1191, cert. denied, — U.S. -, 133 S.Ct. 1238, 185 L.Ed.2d 177 (2013) (citing Davis, supra). Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence will not be disturbed. Id.
The Louisiana Fourth Circuit Court of Appeal has found “the discovery of bullets does not constitute other crimes evidence as there is no crime for possession of bullets.” State v. Dauzart, 11-688 (La. App. 4 Cir. 3/21/12), 89 So.3d 1214, 1221, unit denied, 12-914 (La. 10/12/12), 99 So.3d 38. In Dauzart, the defendant was con *1290 victed of possession of cocaine. On appeal, he argued the trial court erroneously allowed the State to introduce rounds found in a closet during the execution of a search warrant. Id. at 1220. The appellate court found the rounds were admissible under the res gestae exception and also did not constitute other crimes evidence. Id. at 1221.
Similar to Daumrt, we find the rounds in defendant’s room and closet do not constitute other crimes evidence as there is no crime for possession of ammunition, and the trial court did not abuse its discretion by admitting the rounds into evidence.
Finally, even assuming the rounds recovered from defendant’s room constituted impermissible “other crimes evidence,” any such error is subject to a harmless error analysis. See Davis, 08-165, 993 So.2d at 306; State v. Marsalis, 04-827 (La.App. 5 Cir. 4/26/05), 902 So.2d 1081, 1085. The test for determining if an error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. Davis, supra; Marsalis, 902 So.2d at 1087.
Mr. Thomas testified he observed defendant shooting Mr. Dearmas, and Mr. Veal testified defendant was at the crime scene at the time of the shooting. Further, Mr. Veal testified that after becoming a witness in this case, he was subsequently shot outside of his house. Also, Mr. Thomas testified that defendant’s known associates and friends left a newspaper article at his home regarding the killing of a witness to a murder. Jail telephone conversations connected defendant to the intimidation of Mr. Veal and Mr. Thomas. In light of this testimony and evidence, we find even if the rounds were impermissible other crimes evidence, the admission was harmless.
This assignment of error also lacks merit.
In his third assignment of error, defendant challenges the sentences imposed by the trial court as excessive due to their consecutive nature. On March 20, 2014, the trial court sentenced defendant to the mandatory term of life imprisonment at hard labor for second degree murder, and 40 years at hard labor on the two counts of intimidating a witness. The trial court ordered all sentences to run consecutively.
Defendant does not contend any sentence on its own is excessive. Rather, he argues the consecutive nature of his sentences is excessive. As an initial matter, we note defendant failed to file a motion to reconsider his sentences and further failed to object to the consecutive nature of the sentences in the trial court proceedings. This Court has held the failure to file a motion to reconsider sentence or to state the specific grounds upon which the motion is based limits a defendant | nto a bare review of the sentence for unconstitutional excessiveness. State v. Hunter, 10-552 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272. Further, this Court has held “when the consecutive nature of sentences is not specifically raised in the trial court ... the defendant is precluded from raising the issue on appeal.” State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411. In this case, defendant failed to file a motion to reconsider sentence or specifically object to the consecutive nature of his sentences in the trial court. Accordingly, defendant is not entitled to review of the consecutive nature of his sentences on appeal.

ERROR PATENT REVIEW

We reviewed the record for errors patent in accordance with La. C.Cr.P. art. *1291 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Two errors patent requiring corrective action were noted.
The record reflects the trial court failed to adequately advise defendant of the time period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8. Accordingly, we hereby advise defendant that, pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. See State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42.
The record further reveals a discrepancy between the transcript and the State of Louisiana Uniform Commitment Order. The uniform commitment order reflects the date of all three offenses as April 18, 2012. This is the offense date for the second degree murder charge (count one). However, the record reflects that hgthe date of offense for intimidation of the witness, Arthur Veal (count two), was April 24, 2012, and intimidation of the witness, Darrell Thomas (count three), was April 25, 2012.
This Court has previously remanded a case for correction of the uniform commitment order in its error patent review when it is inconsistent with the record. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-481 (La.11/7/14), 152 So.3d 170 (citing State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142). Accordingly, we remand this matter and order that the uniform commitment order be corrected to reflect the correct dates of the offenses. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See Long, 106 So.3d at 1142 (citing La. C.Cr.P. art. 892(B)(2)).

DECREE

For the foregoing reasons, we affirm defendant’s convictions and sentences. We remand the matter for correction of the Louisiana Uniform Commitment Order consistent with this opinion.

AFFIRMED: REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER

. Neither defendant’s motion to sever the offenses, nor the State’s opposition in response, appears in the record. However, the State acknowledged that defendant filed this motion and further represented on the record that it provided the trial court with a copy of its opposition brief.

. The trial transcript refers to this witness as “Durrell Thomas.” However, the bill of information and jury verdict form for the intimidation of a witness charge relating to Mr. Thomas (count three) indicate his actual name is "Darrell Thomas.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).