MARC E. JOHNSON, Judge.
 

 1 {.Defendant, David Page, was indicted by a Jefferson Parish Grand Jury on March 15, 2007, and charged -with second degree murder in violation of LSA-R.S. 14:30.1. Defendant pleaded not guilty and filed several pre-trial motions, including motions to suppress his statement and the evidence, which were denied after a hearing. He proceeded to trial on October 16, 2007. After a three-day trial, a unanimous 12-person jury found defendant guilty as charged. Defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. This timely appeal follows.
 

 On appeal, defendant was originally represented by Bruce Whittaker with the Louisiana Appellate Project, who filed an
 
 Anders
 
 brief, pursuant to
 
 Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting he had failed to find any non-frivolous issues to raise on appeal. Thereafter, defendant filed a
 
 pro se
 
 supplemental brief raising five assignments of error. Prior to oral ^arguments, current retained counsel, Kevin Boshea, filed a Motion to Enroll as appellate counsel and a Motion to File a Supplemental Brief, which were both granted. Thereafter, Mr. Boshea filed a supplemental brief asserting two assignments of error. Because there are now assigned errors, the issues raised in Mr. Whittaker’s
 
 Anders
 
 brief will not be addressed.
 

 FACTS
 

 Approximately 11:59 p.m. on January 4, 2007, Deputy Leon James, of the Jefferson Parish Sheriff’s Office, responded to the scene of a shooting at the Villa D’Ames apartment complex in Marrero. He observed a black and gold taxi parked in the parking lot still running with both of its rear doors open and a white male slumped over the driving wheel. Emergency medical services arrived, and Deputy James helped remove the victim from the cab. Deputy James noticed the victim, Moneir Gindy, had a gunshot wound to the right side of his body. The victim was subsequently pronounced dead at the scene. A later autopsy revealed the victim died of a gunshot wound to his right chest that la
 
 *446
 
 cerated his liver. The victim’s wallet and $186 cash were found on his person, but his left front pants pocket was turned out with nothing in it.
 

 David Garrison testified that he had known “Moon,” the victim, for approximately five years and used his cab services five days a week while working as a D J in a club in the French Quarter. Around 11:00 p.m. on the night of the murder, Garrison called Moon for a ride from the Bywater area on the eastbank to the Villa D’Ames apartment where his girlfriend lived. Moon picked Garrison up and drove him to the apartment complex. Garrison testified that he and Moon had a conversation about pills before he got out of the cab. In particular, Garrison explained Moon always had pills, his cousin took pills, and he was going to see if his cousin, who lived in the apartment complex, wanted any of Moon’s pills. ^Garrison told Moon to wait and exited the cab. While in the parking lot, Garrison saw defendant and “Poppa” talking. After leaving the cab, Garrison ran into his girlfriend, Te-nille Williams, who was returning from the store, and the two went to his cousin’s apartment where they started arguing. Garrison called Moon’s cell phone to tell him he was coming back, but Moon had left his cell phone at home. Garrison and Williams continued their argument, at which time they heard a gunshot. Williams immediately looked out of the window, heard sirens, and saw police arrive on the scene. Meanwhile, Garrison left the apartment complex.
 

 Although no witnesses came forward on the night of the murder, the police learned within 24 hours, through a confidential informant, of witness, Kecia Blair, who ultimately led them to develop defendant and Darnell Junior as suspects. Blair testified she lived in the ground floor apartment of the building near the murder scene. She stated that on the night of the murder, she was standing at the window that overlooks the parking lot when she saw the cab pull up and Garrison get out. Blair testified that after the cab sat for approximately five to ten minutes, her phone rang and she turned to answer it. When she returned to the window, she saw defendant and Junior enter the back seat of the cab.
 

 Blair stated she felt the cab sat too long so she went to the back of the apartment to get her brother, at which time she heard gunshots. She immediately returned to the window and saw defendant and Junior walking away at a fast pace.
 

 Blair testified she did not go to the police that night but rather told a friend of hers what she saw. She stated the police contacted her the next day, and she gave a statement. Blair identified the perpetrators as “Big Fot” and “Poppa” and showed the police where each lived. She subsequently identified defendant as “Big Fot” and Junior as “Poppa” in a photographic lineup.
 

 | ¡thereafter, the police obtained arrest warrants for defendant and Junior. Defendant was arrested six days after the murder. After waiving his rights, defendant gave a taped statement admitting he was at the scene next to the cab, but that “Poppa” shot the victim. Defendant explained he was coming from a girl’s house when they all went in the Villa D’Ames complex. He stated he saw Junior retrieve a long camouflage gun from the bushes, walk up to the cab driver and ask for money. According to defendant, when the driver refused to give Junior money, Junior pulled the trigger. Defendant denied he or Junior entered the cab at anytime.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 . The Verdict is Contrary to the Law and the Evidence
 

 
 *447
 

 PRO SE ASSIGNMENT OF ERROR NUMBER THREE
 

 Insufficiency of Evidence
 

 DISCUSSION
 

 By these two assignments of error, defendant argues the evidence was insufficient to support his conviction for second degree murder.
 
 [1]
 
 In particular, defendant asserts the evidence failed to show he was the perpetrator of the crime. He contends the identification of him by State witness, Kecia Blair, was unreliable, and specifically challenges her credibility because of issues between her family and his. He also contends there was no scientific evidence, such as fingerprints, DNA, or shotgun residue, or physical evidence to implicate him as the perpetrator. Defendant maintains the evidence against him was circumstantial, and the State failed to exclude every reasonable hypothesis of innocence, namely that either David Garrison or Darnell Junior was the perpetrator.
 

 | fiThe standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator.
 
 State v. Ingram,
 
 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 Id.
 

 Although the State lacked any physical evidence connecting defendant to the crime, two State witnesses, David Garrison and Kecia Blair, testified that defendant was present at the scene at the time of the murder. Garrison testified he saw defendant and Junior nearby when he left the cab. Blair testified she saw defendant and Junior walk up to the cab and enter the cab. She stated defendant entered the cab on the back passenger side while Junior entered on the back driver’s side. She explained the doors of the cab remained open. Blair stated the cab sat too long so she went to the back of the apartment to call her brother at which time she heard one or two shots. When she returned to the window, she saw defendant and Junior walking away at a fast pace. The day after the murder Blair identified defendant in a photographic lineup.
 

 The record shows a shotgun shell was found outside the passenger side of the cab. The State offered the testimony of an expert in firearms and tool mark, Timothy Scanlan, who testified that based on the victim’s wound, the shot was fired less than one foot away. Mr. Scanlan further testified that the shotgun shell found outside the passenger side of the cab was consistent with someone shooting 17the victim from the passenger side of the vehicle. The pathologist who performed the autopsy also testified the victim was shot at a range of six to twelve inches, and his wound was consistent with the victim being shot from the passenger side of the vehicle.
 

 Some fingerprints were lifted from the victim’s cab but none matched the defendant’s fingerprints. Additionally, the rec
 
 *448
 
 ord shows a gunshot residue test on defendant would not have been beneficial because the test must be performed within 12 hours and defendant was not taken into custody until six days after the murder.
 

 In his statement to the police, defendant admitted being at the scene but claimed he remained outside the cab. He further claimed Junior was the shooter. However, Blair testified she had no doubt defendant was the one who entered the passenger side of the cab.
 

 When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Bailey,
 
 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955,
 
 writ denied,
 
 04-1605 (La.11/15/04), 887 So.2d 476,
 
 cert. denied,
 
 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.
 
 Id.
 

 It appears the jury believed Blair’s testimony over defendant’s testimony. Defendant argues Blair’s identification of him as the perpetrator was unreliable or not credible. At trial, there was evidence of some animosity between the Blair family and defendant’s family, resulting from a fight that occurred in the fall of 2002. The jury heard this evidence and still found Blair’s testimony credible.
 

 | ¡¿Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.
 
 State v. Harrell,
 
 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.
 
 State v. Kempton,
 
 01-572, p. 7 (La. App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438.
 

 On appeal, the reviewing court “does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events.”
 
 State v. Davis,
 
 92-1623, p. 11 (La.5/23/94), 637 So.2d 1012, 1020,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). Rather, the court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 Id.; State v. Wiley,
 
 03-884, p. 13 (La.App. 5 Cir. 4/27/04), 880 So.2d 854, 863,
 
 writ denied,
 
 04-1298 (La.10/29/04), 885 So.2d 585.
 

 Defendant argues the evidence failed to exclude the reasonable hypothesis that either Garrison or Junior was the perpetrator. Defendant points to the fact Garrison was the last fare the victim had, fled from the scene after the shooting, and refused to cooperate with the police.
 

 The record shows Garrison testified at trial under a material witness bond. Garrison testified he left the apartment complex immediately after learning the victim had been shot. He explained he left because he was scared, since he had been the last person with the victim. He admitted he did not go to the police but 19rather was picked up by the police for questioning. Garrison further admitted he was not initially truthful with the police but later told the police everything.
 

 Despite Garrison’s reluctance to cooperate, the evidence excluded him as the
 
 *449
 
 perpetrator. Garrison and his girlfriend, Tenille, testified that they were arguing in Garrison’s cousin’s apartment when they heard a gunshot. Additionally, Kecia Blair testified she saw Garrison get out of the cab and walk away before she saw defendant and Junior enter the cab and heard the gunshot. Immediately after hearing the gunshot, Blair saw defendant and Junior, not Garrison, walking away from the cab. Because several witnesses place Garrison away from the scene at the time of the shooting, it does not appear defendant’s alternative hypothesis, that Garrison was the perpetrator, is sufficiently reasonable that a rational juror could not have found defendant guilty beyond a reasonable doubt.
 

 Based on the foregoing, it appears the State negated any reasonable probability of misidentification. A review of all the evidence shows the jury could have reasonably determined defendant was the shooter, even absent evidence such as fingerprints and gunshot residue testing.
 
 See State v. Mitchell,
 
 08-136, pp. 11 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 728.
 

 Defendant also contends the evidence shows Junior was the shooter and not him. He maintains that under the law of principals, his mere presence at the scene is insufficient to show he had the requisite mental state, and that he aided and abetted in the murder.
 

 The record shows the jury was instructed on the law of principals. Under LSA-R.S. 14:24, “[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” Only those persons who “knowingly | ^participate in planning or execution of a crime” are principals to that crime.
 
 State v. Pierre,
 
 93-893, p. 4 (La.2/3/94), 631 So.2d 427, 428;
 
 State v. King,
 
 06-554, pp. 7-8 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390,
 
 writ denied,
 
 07-371 (La.5/4/07), 956 So.2d 600.
 

 An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.
 
 State v. King, supra.
 
 The mental state of one defendant may not be imputed to another defendant. Thus, mere presence at the scene of a crime does not make one a principal to the crime.
 
 Id.
 
 However, “[i]t is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice’s intention.”
 
 State v. Anderson,
 
 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1225 (per curiam),
 
 quoting
 
 2 W. LaFave, A. Scott, Substantive Criminal Law, § 6.7, p. 138 (West 1996).
 

 In
 
 State v. Hill,
 
 98-1087, p. 10 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 696-97,
 
 writ denied,
 
 99-2848 (La.3/24/00), 758 So.2d 147, this Court upheld the defendant’s second degree murder conviction after the jury determined he was at least a principal to the crime. This Court determined that 1) the defendant chose to remain with the co-defendant, at the murder scene, with knowledge, by his own admission, that his co-defendant planned to rob the victim, 2) the defendant did nothing to prevent the crime, and 3) the defendant did not come to the victim’s aid after the shooting, but rather fled the scene.
 

 Likewise, defendant in the present case remained with Junior at the scene, did nothing to prevent the crime, fled the scene rather than coming to the victim’s aid after the shooting, and did not attempt to report the shooting. Additionally, de
 
 *450
 
 fendant and Junior had been seen together on the day of the murder talking about |1T “flighting” and money, which was explained to mean they would rob someone if they had the chance. Furthermore, in his statement to the police, defendant admitted he was on the driver’s side of the taxi cab but claimed Junior shot the cab driver. Defendant stated he saw Junior get a camouflaged weapon from the bushes, walk up to the cab driver, stick the gun in the window, and demand money from the cab driver. Thus, even under the law of principals, the evidence is sufficient to support defendant’s second degree murder conviction.
 

 We find no merit to these assignments of error.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 The Prosecution Introduced, over an Objection, Improper “Bad Acts” or “Other Crimes Evidence” in Its Rebuttal Case
 

 DISCUSSION
 

 Defendant argues the trial court erred in admitting evidence of defendant’s trespassing violations during the testimony of the State’s rebuttal witness, Deputy Christopher Thomas. Defendant contends the evidence was not proper rebuttal evidence because it did not rebut any evidence presented by the defense. He further asserts no
 
 Priewr
 

 [2]
 

 hearing was held and no limiting instructions were given to the jury. Defendant alleges he was prejudiced by the admission of this other crimes evidence because it allowed the jury to infer that defendant is a habitual criminal who had no respect for the law.
 

 Immediately after the State called Deputy Thomas to testify on rebuttal, defendant objected stating, “it’s my understanding that this witness is going to talk about some incidents with my client being arrested for prior bad acts. There was no Pri-eur hearing that was had.” The State responded stating it was not going to ask Deputy Thomas about any arrests. The State explained Deputy Thomas was _Jjjgoing to testify that defendant was told to leave the premises of the Villa D’Ames on three occasions, but was not going to mention any arrests. The trial court never specifically overruled defendant’s objection but stated “that’s all right” and noted defendant’s objection for the record.
 

 Deputy Thomas proceeded to testify. He stated that, as head of security detail at the Villa D’Ames apartments, he had asked defendant to leave the premises on July 27, 2006 with the understanding that defendant was no longer welcome at the property. According to Deputy Thomas, defendant was thereafter observed on the property on three separate occasions and asked to leave each time, including the day after the murder.
 

 On appeal, defendant argues Deputy Thomas’ rebuttal was improper. However, defendant failed to object to Deputy Thomas’ testimony on that ground at trial. To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. LSA-C.Cr.P. art. 841(A);
 
 State v. Enclard,
 
 03-283, p. 11 (La.App. 5 Cir. 6/19/03), 850 So.2d 845, 853. A new basis for an objection may not be raised for the first time on appeal.
 
 State v. Winfrey,
 
 97-427, p. 23 (La.App. 5 Cir.10/28/97), 703 So.2d 63, 77,
 
 writ denied,
 
 98-264 (La.6/19/98), 719 So.2d 481.
 

 In
 
 Winfrey, supra,
 
 the defendant argued on appeal that the trial court had allowed the prosecutor to go beyond the
 
 *451
 
 scope of cross-examination on redirect. He also argued on appeal that the testimony was based on inadmissible hearsay. This Court found that the defendant had not raised the issue of redirect testimony exceeding the scope of cross-examination at trial but only argued the testimony was based on hearsay. Accordingly, this Court limited its analysis to the issue of hearsay. Because defendant did not raise the issue of improper rebuttal testimony |iaat trial, the issue on appeal is limited to the basis of his objection at trial, which was the admission of other bad acts during Deputy Thomas’ rebuttal testimony.
 

 Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404(B)(1);
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La.1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule.
 
 State v. Dauzart,
 
 02-1187, p. 8 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Evidence of other crimes is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad act. LSA-C.E. art. 404(B)(1);
 
 Id.
 

 In order for other crimes evidence to be admitted under LSA-C.E. art. 404(B)(1), certain requirements must be met. Under
 
 State v. Prieur, supra,
 
 the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies.
 
 State v. Jackson,
 
 05-923, p. 10 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 78,
 
 writ denied,
 
 06-1589 (La.1/8/07), 948 So.2d 121. Additionally, one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged.
 
 Id.
 
 Further, the probative value of the extraneous evidence must outweigh its prejudicial effect. LSA-C.E. art. 403;
 
 State v. Jackson,
 
 05-923 at 11, 926 So.2d at 78.
 

 Contrary to defendant’s claim, it does not appear Deputy Thomas’ rebuttal testimony constituted evidence of “other crimes or bad acts” as contemplated by |14LSA-C.E. art. 404(B). Deputy Thomas simply testified that defendant had been asked to leave the Villa D’Ames apartment complex by security several times in the six months prior to the murder and the day after the murder. Deputy Thomas also stated that quite a few other people had been asked to leave the property during this period. Deputy Thomas explained it was not uncommon for security to ask people to leave. There was no suggestion that defendant was committing a crime when asked to leave the property or that he was ever arrested for trespassing on the property.
 

 In
 
 State v. Nguyen,
 
 04-321, pp. 13-14 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 909,
 
 writ denied,
 
 05-220 (La.4/29/05), 901 So.2d 1064, this Court concluded a witness’ testimony about being involved in an altercation with defendant did not constitute evidence of other crimes as contemplated by LSA-C.E. art. 404(B). This Court noted that no particulars of the altercation were given. This Court determined that because the testimony was not evidence of other bad acts, pre-trial notice of the testimony was not required.
 

 Also, in
 
 State v. Marsalis,
 
 04-827, pp. 7-8 (La.App. 5 Cir. 4/26/05), 902 So.2d 1081,
 
 *452
 
 1086, this Court found a witness’ testimony that defendant was housed in the maximum security side of the jail where sentenced inmates were housed was not other crimes evidence. This Court noted the objectionable testimony did not specifically mention defendant was in jail for an armed robbery conviction and awaiting trial for first degree murder, and thus, the testimony did not impermissibly reference other crimes evidence.
 

 And, in
 
 State v. Sprinkle,
 
 01-137, pp. 18-21 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, 1143-45,
 
 writ denied,
 
 01-3062 (La.10/25/02), 827 So.2d 1174,
 
 cert. denied,
 
 537 U.S. 1235, 123 S.Ct. 1358, 155 L.Ed.2d 200 (2003), this Court determined a State witness’ testimony that there were telephones in the jail, after |15the witness testified the defendant was initially ruled out as a suspect because he was in jail at the time, was not an impermissible reference to another crime. This Court found the question and response at issue made no specific mention of other crimes committed or alleged to have been committed by the defendant.
 

 Likewise, in the present case, there was no specific mention of other crimes committed or alleged to have been committed by defendant. Deputy Thomas gave no particulars surrounding the occasions, such as what defendant said or did, when defendant was asked to leave. Deputy Thomas made it clear that quite a few people get asked to leave the property and that it is not uncommon. Thus, the testimony that defendant had been asked to leave the property on several occasions does not appear to be evidence of other crimes or bad acts for which
 
 Prieur
 
 notice is required.
 
 [3]
 

 This assignment of error merits little consideration.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER ONE
 

 Constitutionally Deficient Indictment
 

 PRO SE ASSIGNMENT OF ERROR NUMBER TWO
 

 Trial Court Was Without Jurisdiction
 

 DISCUSSION
 

 These two assignments of error overlap. Defendant contends the grand jury indictment was defective and, therefore, the trial court lacked subject matter jurisdiction to hear the case. Defendant essentially maintains the indictment was | , (¡defective because it failed to meet the requirements of LSA-C.Cr.P. art. 464, and it did not adequately notify him of the charges against him.
 

 The time for testing the sufficiency of an indictment is before trial by a motion to quash or an application for a bill of particulars.
 
 State v. Richthofen,
 
 01-500, p. 34 (La.App. 5 Cir. 11/27/01), 803 So.2d 171, 192. “A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense.”
 
 *453
 

 State v. Draughn,
 
 05-1825, p. 60 (La.1/7/07), 950 So.2d 583, 623,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
 

 In the present ease, defendant failed to file a motion to quash, and thus, arguably-waived any claim based on the allegedly defective indictment. In
 
 Draughn,
 
 05-1825 at 60-61, 950 So.2d at 623-24, the Louisiana Supreme Court noted the same procedural bar to the defendant’s claim that the indictment was defective, but went on to address defendant’s claim.
 

 Article I, § 13 of the Louisiana Constitution requires that an indictment inform a defendant of the nature and cause of the accusation against him. This requirement is implemented in LSA-C.Cr.P. art. 464, which provides:
 

 The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
 

 LSA-C.Cr.P. art. 465 authorizes the use of specific short form indictments in charging certain offenses, including second degree murder. The constitutionality of the short forms has been consistently upheld by the Louisiana Supreme Court.
 
 State v. Draughn,
 
 05-1825 at 61, 950 So.2d at 624. When a short form indictment 117is used, it is intended that the defendant use a bill of particulars to procure details as to the statutory method by which he committed the offense.
 
 Id.
 

 In the present case, the State charged defendant by a bill of indictment, which read in pertinent part, “David Page ... on or about the 4th day of January in the year of our Lord, Two Thousand and Seven ... violated 14:30.1 in that [he] did commit second degree murder of Moneir Gindy.” As such, defendant was charged in compliance with LSA-C.Cr.P. art. 465(A)(32), which provides a short form indictment for second degree murder as follows: “A.B. committed second degree murder of C.D.”
 
 See State v. Richthofen,
 
 01-500 at 36, 803 So.2d at 193.
 

 Although defendant did not file a motion for bill of particulars, he filed a motion for discovery. In response to defendant’s discovery request, the State provided, among other things, the police reports, the arrest warrants for both defendant and Junior, the probable cause affidavits, the statements of defendant and Junior, and the statements of three key State witnesses. As such, defendant was fully aware of the nature of the charges against him.
 

 Accordingly, these two assignments of error merit little consideration.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER FOUR
 

 Credit for Time Served
 

 DISCUSSION
 

 Defendant contends the record does not show he was given credit for time served. Although the commitment indicates defendant was given credit for time served, the sentencing transcript does not. Generally, the transcript prevails where there is an inconsistency between the minute entry and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 The granting of credit for time served has long been self-operating under LSA-C.Cr.P. art. 880.
 
 State v. Johnson,
 
 05-180, pp. 10-11 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 582,
 
 writ de nied,
 
 06-1254 (La.12/15/06), 944 So.2d 1282. Thus, it is no longer necessary for
 
 *454
 
 the Court of Appeal to amend a defendant’s sentence to reflect credit for time served.
 

 We find not merit to this assignment.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER FIVE
 

 Appellant urges this Court to examine the record for errors patent and to take whatever corrective action it deems appropriate.
 

 DISCUSSION
 

 Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990), regardless of whether defendant makes such a request. The review reveals no errors patent in this case.
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . It is noted that defendant did not file a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821. However, this failure does not preclude appellate review of the sufficiency of the evidence.
 
 State v. Washington,
 
 421 So.2d 887, 889 (La. 1982);
 
 State v. Carey,
 
 04-1073 (La.App. 5 Cir. 3/29/05), 901 So.2d 509, 512, footnote 4.
 

 [2]
 

 .
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La. 1973).
 

 [3]
 

 . Even assuming Deputy Thomas’ rebuttal testimony constituted an impermissible reference to other crimes or bad acts and was improperly admitted, such an error is subject to a harmless error analysis.
 
 State v. Marsalis, supra
 
 at 8, 902 So.2d at 1087. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error.
 
 Id.
 

 As discussed in assignment of error number one, there was ample evidence to support defendant's conviction for second degree murder. Kecia Blair testified she saw defendant enter the cab, heard a gunshot a few minutes later, and then saw defendant walk from the cab. Defendant admitted being at the scene at the time of the murder. Evidence that defendant had been asked to leave the property on three occasions in the six months prior to the murder would not have contributed to his guilty verdict.