LILJEBERG, J.
11 Defendant, Curtis L. Kyles, appeals his conviction for second degree murder in violation of La. R.S. 14:30.1. For the reasons stated more fully below, we affirm defendant’s conviction and sentence.
PROCEDURAL HISTORY
On October 14,2010, a grand jury indicted defendant with the second degree mur *153 der of Crystal St. Pierre.[1] Defendant was arraigned and pleaded not guilty on October 15, 2010. Defendant filed two motions to quash the indictment as constitutionally deficient on June 3, 2013 and September 19, 2015. The trial court denied both motions.
On September 21-29, 2015, the ease was tried before a twelve-person jury that unanimously found defendant guilty as charged of second degree murder. On November 9, 2015, defendant filed a motion for a new trial, which the trial court denied on November 10, 2015. On that same date, after defendant waived delays, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant filed a motion for reconsideration of sentence which the trial court denied. Defendant then filed a motion for appeal, which the trial court granted on November 12, 2015. This appeal follows.
FACTS
Chicwanda Forbes was initially charged as a co-defendant for the second degree murder of the victim, Crystal St. Pierre; however, in return for her testimony against defendant in this case, she pleaded guilty to second degree kidnapping and received a fifteen-year prison sentence. At trial, Forbes testified that she regularly visited defendant at his residence in the Cedar Point apartment complex in Algiers, Louisiana. On June 10, 2010, she went with defendant to a |aWinn Dixie in Algiers to purchase groceries. Defendant tried to pay for the groceries with a food stamp card, but he did not have a valid PIN number.[2] Forbes explained that the victim gave defendant the card. After multiple failed attempts at using the card, defendant became “angry” and attempted to call the victim to determine her whereabouts. Forbes and defendant then drove back to his apartment complex. Once there, they located the victim at Lavelle Davis’ apartment, which was a few doors down from defendant’s apartment.
Forbes testified that defendant was very angry and beat on Davis’ door until Davis opened it. The victim exited the apartment and Forbes punched her. They then brought the victim to defendant’s vehicle. Forbes admitted the victim was not free to leave. Forbes sat in the back seat with the victim' while defendant drove. As they drove, defendant argued with the victim about the food stamp card and told her that “she’s going to die and he going to kill her.” Ms. Forbes testified that defendant drove to a location off the road and into a field. Defendant stopped, opened the back door and instructed Forbes and the victim to exit the vehicle. According to Forbes, defendant then grabbed the victim, pushed her down to her knees, and shot her in the head. Forbes described the gun used as a .38 revolver.
After shooting the victim, Forbes and defendant drove around for a couple of hours while defendant made various phone calls. Forbes testified that defendant called his daughter, but she told him not to come to her house because the police were there. Forbes further testified that when she told defendant she wanted to go home, he told her “[yjou’re not going home for a while.” They then drove to Bassfield, Mississippi, to stay with some of defendant’s relatives.[3] *154 During their stay, Forbes attempted to leave, but defendant struck her on her head, lip and eye. | ¡¡Defendant then threatened Forbes, telling her he was going to kill her and that he did not trust her. After four days in Bassfield, defendant’s son, Curtis Burnes, drove defendant and Forbes to a bank in Covington, Louisiana, to cash a check. When they returned to Bassfield, defendant and Forbes were arrested.
Cedar Point apartment manager, La-velle Davis, testified that she had a close relationship with the victim, and was also familiar with defendant and Forbes because defendant lived in the apartment complex. Davis testified that on the day of the murder, defendant called her a few times, but she did not answer. A short time later there was banging on ,her front door. When Davis opened the door, defendant stated, “where’s that b***h.” When Davis inquired as to who he was talking about, defendant told her he wanted Crystal to come outside. The victim then came to the door and told Davis not to worry and that she would take care of the situation. As the victim exited Davis’ apartment, Forbes grabbed her by her hair and began punching her in the head and beating her as they went down the stairs. Davis then heard defendant demand that the victim give him his money. When Davis tried to intervene, defendant lifted his shirt, revealing what Davis believed to be the handle of a gun.
Sheridan Flax was drinking coffee with Davis at her apartment on June 10, 2010. He was in the bathroom when he heard banging at the door. He then heard a man “screaming for somebody” and yelling about money. Flax thought about intervening, but observed the man make a gesture which suggested he might be armed. Flax went to a bedroom window and watched as the victim attempted to escape from defendant’s vehicle, but was pulled back into the car by a black female. Flax got into his car and followed defendant’s vehicle. He wrote down the license plate number and called the police.
Officer Michael Washington of. the New Orleans Police Department testified that he was dispatched to the Cedar Point apartment complex in response to a ^possible kidnapping of a white female by a black male and female driving a vehicle with the license plate number SIU617. He was unable to locate the vehicle at the apartment complex, but upon running the plate, discovered that the vehicle was registered to Tatiana and Eric Narcese. It was later learned that Tatiana Narcese is defendant’s daughter.
Detective Gary Barteet of the Jefferson Parish Sheriffs Office testified that he responded to a call the following day on June 11, 2010, regarding a body found in a wooded area in Avondale, Louisiana. Detective Barteet’s first lead in the ease was developed on June 14, 2010, when his office received an anonymous call, leading him to interview Ms. Davis. Through speaking with Davis, Detective Barteet identified defendant and Forbes as suspects in the victim’s murder. Detective Barteet obtained defendant’s cell phone number, and through his phone records, discovered that defendant’s cell phone was used in the vicinity of the crime scene near the time of the homicide.
In addition, Federal Bureau of Investigation Agent William Williams testified as an expert in historical cell site analysis. *155 Agent Williams explained that the phone registered to defendant used a cell phone tower near the Winn Dixie on Holiday Drive in Algiers at 10:46 a.m. on June 10, 2010. Agent Williams further testified that on the same morning, defendant’s cell phone was used at 10:68 a.m. in close proximity to the Cedar Point apartment complex, where the victim was last seen before her murder. Agent Williams explained that after 11:00 a.m., defendant’s cell phone demonstrated movement; specifically, at 11:11 a.m., the phone utilized a tower situated at the base of the Crescent City Connection in Algiers, approximately a mile from the Cedar Point apartments. At 11:17 a.m., the phone utilized a cell phone tower in Harvey, and at ll:22'a.m., it utilized a cell phone tower near Westwe-go. The next call at 11:37 a,m. placed defendant’s cell phone further west along Highway 90, in the Waggaman area, approximately four | ^hundred yards from where the victim’s body was located. After. 12:12 p.m. on June 10, 2010, the cell phone records for defendant’s phone indicated the cell phone could no longer be located.
Dr. Fraser MacKenzie, expert in the field of forensic pathology, performed the victim’s autopsy on June 12, 2010. Dr. MacKenzie testified the victim sustained a gunshot wound to the back of her head and bruises on the front of the head near the right forehead and the right upper eyelid. A copper jacket and lead projectile were recovered from the victim’s skull. Dr. MacKenzie opined that the victim died from a gunshot wound to the head as a result of a homicide. Dr. Erin Watson, an expert in forensic entomology, explained that her analysis of the insect.development on the victim’s body indicated she died sometime during the daylight hours of June 10, 2010.
Captain Dennis Thornton of the Jefferson Parish Sheriff’s Office also participated in the murder investigation. Captain Thornton identified numerous photographs depicting evidence recovered from the scene of the crime, including tire track impressions. Joel O’Lear, an expert in the field of tire track examination, compared tire track impressions obtained from the scene to the tires from defendant’s vehicle, and determined they matched the rear passenger-side tire from defendant’s vehicle.
After defendant and Forbes were apprehended in Mississippi, Forbes provided a statement to Detective Barteet. Forbes informed him that defendant and the victim had a dispute over a food stamp card, which led him to retrieve the Winn Dixie surveillance video showing defendant’s attempted use of the food stamp card at the checkout counter. In addition, a search of defendant’s apartment uncovered .38 caliber ammunition. Jene Rauch, an expert in the field of firearm and toolmark examination, testified that she analyzed the copper jacket and lead projectile recovered during the victim’s autopsy, as well as the ammunition | (¡recovered pursuant to the search conducted at defendant’s residence. The ammunition recovered from defendant’s residence were .38 caliber special rounds, which are used in a revolver. She further found the ballistic materials from the autopsy were consistent with .38 caliber ammunition, capable of being fired from a revolver.
DISCUSSION
Defendant raises two assignment of error on appeal. In his first assignment of error, defendant argues that' the trial court erred in denying his motion to quash the indictment filed against him because it is constitutionally deficient. In his second assignment of error, he argues that the evidence was insufficient to support the verdict against him. .
*156 When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Therefore, we first address defendant’s second assignment of error regarding the sufficiency of the evidence.
Defendant argues that credible evidence of guilt is lacking in this case. He contends the only evidence connecting him to the victim’s death is the testimony of Forbes, who received a plea bargain in exchange for her testimony against him. Defendant states that it is irrational to find that Forbes’ testimony establishes his guilt beyond a reasonable doubt under the circumstances of this case. Accordingly, defendant contends the evidence is insufficient to support the verdict of second degree murder.
The State responds that defendant’s assigned error does not contest the elements necessary to prove second degree murder, but only concerns Forbes’ | credibility. The State notes the credibility of a witness is strictly a matter for the trier of fact and that the jury was aware of defendant’s argument regarding Forbes’ motivation for testifying. The State asserts the jury was informed that Forbes was originally charged with second degree murder and was permitted to plea to a fifteen-year sentence for second degree kidnapping in exchange for her testimony against defendant. The State further notes the defense fully cross-examined Forbes regarding her motivations for testifying at trial. The State contends the jury made a credibility determination and believed the State’s case over that of the defense.
The State also maintains that it established defendant’s guilt not only with Forbes’ testimony, but also with corroborating evidence and testimony from several other witnesses. It contends a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant was guilty of second degree murder.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id. at 319, 99 S.Ct. 2781; see also State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to | «prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La. 1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard but *157 rather provides a helpful basis for determining the existence of reasonable doubt. Id. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
As it pertains to the instant case, second degree murder is defined as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and' a review of the correctness of this determination is guided by the Jackson standard. State v. Spears, 05-0964 (La. 4/4/06), 929 So.2d 1219, 1224; State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La. 5/4/07), 956 So.2d 599. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Gant, 942 So.2d at 1111. The act of aiming a lethal weapon and discharging it in the victim’s direction supports a finding by the trier of fact that the defendant acted with specific intent to kill. Id. In addition, flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. Id.
 In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the defendant’s identity as the perpetrator. State v. Draughn, 05-1825 (La. 1/17/07), 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). “‘As a general matter, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the [s]tate is required to negate any reasonable probability of misidentification.’ ” Id. (quoting State v. Neal, 00-674 (La. 6/29/01), 796 So.2d 649, 658, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)).
As explained above, defendant maintains the. only testimony connecting him .to the victim’s murder, is from Forbes who lacks credibility because she entered into a plea bargain with the State. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound ’ discretion of the trier of fact. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id. “[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the .fact finder at trial.” State v. Miller, 11-498 (La.App. 5 Cir. 12/13/11), 84 So.3d 611, 617, writ denied, 12-176 (La. 9/14/12), 97 So.3d 1012.
Moreover, in the absence of internal contradiction or irreconcilable conflicts with physical evidence,' the testimony of one "witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-987 (La. 1/30/09), 999 So.2d 745. A jury may also convict upon a co-defendant’s uncorroborated testimony. State v. Matthews, 450 So.2d 644 (La. 1984); State v. *158 Hopkins, 39,258 (La.App. 2 Cir. 3/2/05), 897 So.2d 854, 862, writ denied, 05-1238 (La. 12/16/05), 917 So.2d 1107. An accomplice is qualified to testify against a co-perpeteator even if the | inprosecution offers him inducements to testify and such inducements would merely affect the witness’s credibility. Hopkins, 897 So.2d at 862. A conviction can even be based on the uncorroborated testimony of an accomplice or of someone making a plea bargain with the government, provided the testimony is not‘incredible or otherwise insubstantial oh its face. Neal, 796 So.2d at 659.
At trial, both the State and' defense detailed for the jury Forbes’ favorable plea agreement. Forbes testified that on June 10, 2010, she accompanied defendant to a Winn Dixie store to purchase groceries using a food stamp card given to defendant by the victim. When the card was declined due to án invalid PIN, defendant became angry and tracked the victim down at Lavelle Davis’ apartment in the Cedar Point apartment complex. Forbes admitted that she and defendant forced the victim into defendant’s vehicle, where she, was not free to leave. Forbes kept watch over’ the victim while defendant drove, telling the victim he was going to kill her. Once in a secluded location, defendant instructed the victim to exit the vehicle, pushed her to the ground, and’ shot her in the head with a .38 revolver. Forbes and the victim then fled to Bassfield where they stayed with defendant’s relatives until they were apprehended.[4]
By returning a guilty verdict, the jury obviously believed Forbes’ testimony. Forbes’ testimony was not incredible or insubstantial on its face. Forbes’ testimony at trial was consistent with the physical evidence presented' and clearly demonstrated defendant and Forbes’ roles in the murder of the victim. Forbes’ testimony alone was sufficient to sustain defendant’s conviction of sécond degree murder and there is no basis under the prevailing standard of appellate review to conclude her testimony could not have been believed by a reasonable jury.
hfln addition, other State witnesses’ testimony corroborating Forbes’ account of the events, as well as physical evidence introduced by the State at trial, establish beyond a reasonable doubt that sufficient evidence‘was presented to support the jury’s verdict. Video surveillance footage from the Winn Dixie store in Algiers, as well as the testimony of Terence Foster of the Louisiana Department of Children and Family Services, confirmed that on June 10, 2010, defendant and Forbes attempted to purchase groceries using a food stamp card issued to the victim but were unsuccessful. '
Lavelle Davis testified that on the morning of the murder, defendant had called her before coming to her apartment and banged on her front door.- Davis described defendant as mad when he demanded the victim exit Davis’ apartment. Davis confirmed that when the victim went outside, Forbes punched the victim before forcing her down the stairs. She further testified that she could hear defendant demanding money from the victim. Sheridan Flax also testified that he watched as the victim was forced into defendant’s vehicle. Both Davis and Flax further testified that based on their observations, they believed defendant was armed.
*159 Defendant’s cell phone records also tracked defendant’s movements beginning at the Winn Dixie store in Algiers at 10:46 a.m. on June 10, 2010, to the Cedar Point apartment complex, where the victim was last seen. The cell phone records ended at 11:37 a.m. in -the Waggaman area west along Highway 90, four hundred yards, from where the victim, who.had sustained a gunshot wound to the head, was located. Forensic entomologist, Dr. Watson, further confirmed the timeline of events, testifying that based on the insect development recovered from the body, the victim died sometime during the daylight hours of June 10, 2010. Additionally, physical evidence found at the scene included , a tire track impression matching one of the tires on defendant’s vehicle, and the ballistic materials from |12the autopsy were consistent with the .38 ammunition seized from defendant’s apartment..
Thus, even discounting Forbes’ testimony, for the above reasons, we find that a rational trier of fact could have still found, under the Jackson standard, that the evidence was sufficient to support the second degree murder verdict. Based on the foregoing, this assigned error is without merit.[5]
In his other assignment of error, defendant argues the trial court erred in .denying his motions to quash the indictment on the basis that the second degree murder charge was constitutionally deficient. In his motions to quash, defendant argued that the charge, which utilized the short form; indictment, was deficient because it failed to specify whether the' grand jury indicted defendant on the specific intent theory or the felony murder theory of second degree murder.
In response, the State maintains that the trial court did not abuse its discretion in denying the motions since defendant was properly charged with a short form indictment, and was well aware of 'the charges against him.
Article I, Section 13 of the Louisiana ’Constitution requires that an indictment inform a defendant of the nature and cause of the accusation against him. State v. Chairs, 12-363 (La.App. 5 Cir. 12/27/12), 106 So.3d 1232, 1240, writ denied, 13-306 (La. 6/21/13), 118 So.3d 413. This requirement is implemented by La. C.Cr.P. Art. 464, which provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall hot be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his preju- ' dice;
| iaLa. C.Cr.P. Art. 465 authorizes the use of specific short form indictments in charging certain offenses, including second degree murder.[6] Chairs, 106 So.3d at 1240. Both this Court and the Louisiana Supreme Court have consistently upheld the constitutionality of these short forms. Id. (citing Draughn, 950 So.2d at 624). This Court has held that a post-verdict attack on the sufficiency of an indictment should *160 be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 452-53, writ denied, 09-2684 (La. 6/4/10), 38 So.3d 299.
For instance, in Chairs, supra, the defendant, who had been convicted of second degree murder, argued on appeal that the trial court erred in denying his motion to quash the indictment. He had argued in the motion that the short form was constitutionally deficient due to its failure to specify whether his prosecution was being pursued under the specific intent theory or the felony murder theory of second degree murder. Chairs, 106 So.3d at 1240. His indictment read in pertinent part: “... on or about the 8th day of November, 2009, the said ROGER D. CHAIRS ... violated R.S. 14:30.1 in that [he] did commit second degree murder of a known juvenile (DOB 4/29/2002).” Id. at 1241.
This Court determined that the defendant in Chairs was fully aware of the nature of the charges against him and concluded that the trial court did not abuse its discretion in denying the defendant’s motion to quash. Id. In reaching this conclusion, this Court noted that the indictment conformed to the short form provided in La. C.Cr.P. Art. 465 and that the defendant was provided with ample discovery, including police reports, arrest warrants, search warrants, crime lab 114reports, and statements of witnesses and co-defendants to understand the charge against him. Id.
In the instant case, the indictment complied with the short form in La. C.Cr.P. Art. 465(A)(32), as it provided: “Curtis L. Kyles... on or about the 10th day of June in the year of our Lord, Two Thousand and Ten with force and arms, in the Parish aforesaid, and within the jurisdiction of the Twenty-Fourth Judicial District Court of Louisiana, in and for the Parish aforesaid, violated R.S. 14:30.1 in that they[7] did commit second degree murder of Crystal St. Pierre.” Moreover, when a short form indictment is used, it is intended that the defendant use a bill of particulars to procure details as to the statutory method by which he committed the offense. Page, 28 So.3d at 453. On October 28, 2010, defendant filed a Motion for Bill of Particulars, Discovery, and Inspection. The record indicates the State provided to the defense, among other things, police reports, arrest warrants, search warrants, crime lab reports, phone records, and statements of witnesses. Defendant does not contend that he was unable to determine the specifics of the charge against him through discovery.
In view of the foregoing, we determine that defendant received fair notice of the offense charged and was made fully aware of the nature of that charge against him. Accordingly, the trial court did not abuse its discretion in denying defendant’s motion to quash. This assignment of error is without merit.
ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to La. C.Cr.P. Art, 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The following error patent merits attention.
The commitment reflects that defendant was given a proper advisal pf the time period for seeking post-conviction relief as required by La. C.Cr.P. Art. 930.8; 11B however, the transcript indicates that the trial court provided defendant with an incomplete post-conviction relief period ad-visal. Specifically, following sentencing, the trial court advised defendant that he had “two years to seek post conviction relief *161 after this judgment is complete.” The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La. 1983).
If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. Art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La. 4/19/13), 111 So.3d 1030.
Accordingly, we advise defendant that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. Arts. 914 or 922.
DECREE
For the reasons stated above, we affirm defendant’s second degree murder conviction and sentence.
AFFIRMED

. The victim was also known as Crystal Roper.

. Terence Foster, a fraud investigator for the Louisiana Department of Children and Family Services, verified that records for a food stamp card issued to Crystal Roper indicated repeated attempts to use the card with an incorrect PIN number on June 10, 2010, at a Winn Dixie store in Algiers.

.Acia Burnes testified that in June 2010, defendant and Forbes came to stay with him at his house in Bassfield. Defendant has a *154 son, Curtís Burnes, Jr., with Ada’s daughter. Ada testified that while they were at this house, defendant and Forbes had a physical confrontation and Acia demanded they leave his house. Defendant and Forbes then stayed in a trailer across the road from Acia’s house, which is owned by Anner Burnes, Ada's niece.

. As previously noted, a defendant's flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience, State v. Cazenave, 00-183 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La. 10/26/01), 799 So.2d 1151.

. Because defendant does not argue that the . State failed to establish.any of the essential statutory elements of his conviction, the sufficiency of the evidence, with respect to the statutory elements need not be addressed. See State v. Henry, 13-558 (La. App. 5 Cir. 3/26/14), 138 So.3d 700, 715, writ denied, 14-962 (La. 2/27/15), 159 So.3d 1064; State v. Ramirez, 09-350 (La.App. 5 Cir. 12/29/09), 30 So.3d 833, 840.

. The short form for second degree murder is provided in La. C.Cr.P. Art. 465(A)(32), which provides: "A.B. committed second degree murder of C.D.”

. Defendant was charged along with Chicwanda Forbes.